1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6
7

KIMBERLEE SANCHEZ, et al.,

Case No. 24-cv-02584-AMO

8

Plaintiffs,

9

v.

**ORDER DENYING MOTION FOR
TEMPORARY RESTRAINING ORDER**

10

CITY OF FREMONT,

Re: Dkt. No. 1

11

Defendant.

12
13          Kimberlee Sanchez, Samantha Just, Kaleb Durmas, Nicole Patterson, Lester Rogers, and

14   Danielle Rivers[1] seek a temporary restraining order preventing the City of Fremont from removing

15   them from their current temporary housing.  Having considered the papers filed by the parties, the

16   relevant legal authority, and the arguments and proffers made during the May 3, 2024 hearing on

17   the matter, the motion for temporary restraining order is **DENIED** for the reasons set forth below.

18   **I.      BACKGROUND**

19           **A.      Factual Background**

20          Plaintiffs are participants in Fremont's Winter Relief Program.  ECF 8-1 ¶¶ 9-14.  Fremont

21   implemented the program to provide temporary shelter to unhoused individuals during the winter

22   months.  *Id.* ¶ 6.  Each participant receives a room in a privately-owned hotel,[2] nightly cooked

23
24   _____
   [1] Additional names – Trevor Blomquist, Kristen Munoz, Jaime Ramos, and Angela Moran –

25   appear in the declarations filed with the complaint.  ECF 1 at 21, 24, 32.  Other individuals –
   Constance Hanneth, James Clark, Michael Cabral, Raylene Dyer, Jennifer Sayer, Jason Fahey,

26   and Angel Ledesma – appeared at the May 3, 2024 hearing but are not named in any of the
   documents currently before the Court.  As used herein, "Plaintiffs" refers to the individuals named

27   in the complaint and those who signed the accompanying declarations.

28   [2] Fremont contracts with the hotel owners who provide rooms for participants.  ECF 8-1 ¶ 8.
   Those contracts expired on May 1, 2024.  *Id.*

1   meals, housekeeping services, check-ins with program staff each evening, and a case manager,

2   who will work with the participant after the program ends.  *Id.*

3        Participation in the program is voluntary, and there is no cost to participate.  However,

4   each participant must sign an agreement.  *Id.*  The agreement states that the program is temporary

5   and "will end April 2024."  ECF 8-1 at 8.  Among other things, participants must limit their

6   possessions to the items that fit in "two plastic storage containers" provided by Fremont.  *Id.* at 10.

7   Participants are responsible for taking their belongings with them when they leave the program.

8   *Id.* at 11.

9        Fremont provided Plaintiffs five notices – dated March 13, 2024, April 5, 2024, April 12,

10  2024, April 19, 2024, and April 29, 2024 – indicating that the program was ending at 10:00 a.m.

11  on May 1, 2024.  ECF 9 ¶ 3 & Ex B.  These notices were hand-delivered or left on a participant's

12  bed during evening check-ins.  *Id.* ¶ 3.  The March 13 notice provides:

13       **The Winter Relief emergency shelter program is scheduled to
         close Wednesday, 01 May 2024, at 10:00 a.m.**

14

15       Over the next approximately 6 weeks, you will need to finalize plans
         for your departure from your shelter room.

16       In line with the Winter Relief program rules, you are strongly
         encouraged to work with your assigned service provider to develop
17       a transition plan and ensure you are document-ready for any future
         housing opportunities.  We strongly recommend that you follow up
18       on any alternative shelter options (like arranging to stay with a
         friend or family member, if possible) or accept other shelter
19       opportunities that may be made available to you.

20       In addition to your assigned service provider, you can connect with
         housing resources through the following agencies:
21

22       **BACS South County Wellness Center - 40963 Grimmer Blvd.
         Fremont, CA 94538**
23       Drop in: Monday - Friday (8:00 a.m.- 4:30 p.m.), Saturday-Sunday
         (9:00 a.m. - 4:00 p.m.)
24       Phone Number: 510-657-7425

25       **ABODE Housing Resource Center - 4075 Papazian Way.
         Fremont, CA 94538**
26       Drop in: Monday and Tuesday (9:00 a.m. - 1 :00 p.m.)
         Phone Number: 510-330-5822

27       **Call 211: Information and Referral Services**

28       **Participants will be required to remove all personal belongings**

United States District Court
Northern District of California

1

**and check out no later than Wednesday, 01 May 2024, 10:00 a.m.**

2

ECF 9 at 4 (emphasis in original).

3

The April 5 notice provides:

4

**The Winter Relief emergency shelter program is scheduled to close Wednesday, 01 May 2024, at 10:00 a.m.**

5

6

Over the next 3.5 weeks, you will need to finalize plans for your departure from this emergency shelter room.

7

In line with the Winter Relief program rules, you are strongly encouraged to work with your assigned service provider to develop a transition plan and ensure you are document-ready for any future housing opportunities.  We recommend that you follow up on any alternative shelter options (like arranging to stay with a friend or family member, if possible) or accept any other shelter opportunities that may be made available to you.

8

9

10

11

The City of Fremont offers a Safe Parking program that provides a safe place for overnight parking to those who are sheltering in a vehicle.  Those exiting from this Winter Relief program are currently being given prioritized entry into Safe Parking.  Please contact me if you would like to learn more about this option.

12

13

14

In addition to your assigned service provider, you can connect with housing resources through the following agencies:

15

16

**BACS South County Wellness Center - 40963 Grimmer Blvd. Fremont, CA 94538**
Drop in: Monday- Friday (8:00 a.m.- 4:30 p.m.), Saturday-Sunday (9:00 a.m. -4:00 p.m.)
Phone Number: 510-657-7425

17

18

19

**ABODE Housing Resource Center - 4075 Papazian Way. Fremont, CA 94538**
Drop in: Monday and Tuesday (9:00 a.m. - 1 :00 p.m.)
Phone Number: 510-330-5822

20

21

**Call 211: Information and Referral Services**

22

**Participants will be required to remove all personal belongings and check out no later than Wednesday, 01 May 2024, 10:00 a.m.**

23

24

*Id.* at 5 (emphasis in original).

25

///

26

///

27

///

28

///

The April 12 notice provides:

> The Winter Relief emergency shelter program will close on Wednesday, 01 May 2024, 10:00 a.m., and all participants will be required to check [*sic*].  **Over the next 18 days, you will need to finalize a plan for departure.**  You are strongly encouraged to work with your assigned service provider to develop an exit plan, ensure you are document-ready for any future housing opportunities, and accept any other shelter opportunities that may be offered to you.

> **Regarding Cluttered Rooms**: To prepare for program closure, City of Fremont staff will be conducting thorough end-of-season room inspections on **Wednesday, 17 April, and Thursday, 18 April 2024.**  The number of personal belongings in your room must meet program rules at that time.  Per program rules, each participant is only permitted to have the equivalent of two large plastic bins of personal belongings in the motel room and oversized items are not permitted.  Aside from the 2 permitted bins, all other belongings must be removed from the motel's property.  Shelter rooms found to be out of compliance (*meaning you have more than 2 bins of personal belongings per person in your room*) will be subject to early program discharge.  **If your room is found to be cluttered during inspections, you will be immediately discharged from the program and required to check out of the emergency shelter room on Friday, 19 April 2024, by 10:00 a.m.**

> **The City of Fremont offers a Safe Parking program** that provides a safe place for overnight parking to those who are sheltering in a vehicle.  Winter Relief program participants with vehicles are being offered prioritized enrolment [*sic*] until Friday, 26 April 2024, at 4:00 p.m.  Your participation in the Safe Parking program can start as early as Wednesday, 01 May 2024, if you apply early.  Safe Parking program enrollment is on a first come, first served basis.  Space is limited so please apply as early as possible by calling 510-320-6520 or email JChristopher@fremont.gov.  The CARAvan safe parking program in Union City is also prioritizing your applications during this time.  Please contact Jesus Garcia at 510-675-5482 to learn more about their program.

> In discussion with case managers and service providers, the City of Fremont will offer short-term shelter extensions for a limited number of households that meet strict eligibility criteria.  Possible criteria for shelter extensions may include a documented imminent match to permanent housing, a documented medical condition or pending medical procedure requiring stabilization, or other documented vulnerability.  Households with minors and/or school-age children that have been sheltering at the motel as their sole/primary place of residence will be considered for extension to support ongoing educational efforts.  Any offer of short-term extension will be made in writing no later than Monday, 22 April 2024, and an updated City of Fremont program agreement will need to be signed.  Any offer of shelter room extension may require the household to relocate to a new motel room or different motel property in Fremont.

*Id.* at 6 (emphasis and highlighting in original).

The April 19, 2024 notice reads:

> Thank you for working so hard to bring your rooms into compliance with Winter Relief program rules related to the storage of excess personal belongings in the shelter rooms.  Please stay in compliance to remain in the program!
>
> Congratulations to the 6 raffle winners!  Those who submitted a program survey were entered into a drawing for various prizes. Winners signed documentation acknowledging receipt of their prizes on 18 April 24.  Thank you to all who submitted a completed survey.  Your completed surveys will ensure that the City of Fremont continues to improve the Winter Relief program.  We aim to become more effective and responsive to community needs.  It is not too late to submit your survey.  Please seal your completed survey into the provided envelope and return it to your nighttime program staff.
>
> The Winter Relief emergency shelter program will close soon, and all participants will need to check out by Wednesday, 01 May 2024, 1 0:00 a.m.  Over the next 11 days, you will need to finalize a plan for departure.  You are strongly encouraged to work with your assigned service provider to develop an exit plan, ensure you are document-ready for any future housing opportunities, and accept any other shelter opportunities that may be offered to you.
>
> Please consider asking your case manager to submit a referral to the City of Fremont's Housing Navigation Center (HNC).  Located adjacent to City Hall buildings, the HNC is an innovative approach to help those experiencing homelessness find housing while providing a clean, safe, and calm environment so participants can focus on finding stable, permanent housing.  To watch a short video about the HNC, please enter "Tour of Fremont's Housing Navigation Center" into the YouTube's search bar.  You can also visit the City of Fremont's website to learn more[:] *www.fremont.gov*.  There are currently open bed spaces at the HNC that will be filled on a first-come, first-served basis.
>
> The City of Fremont Safe Parking program provides a safe place for overnight parking to those who are sheltering in a vehicle.  Winter Relief program participants with vehicles are being offered prioritized enrolment [*sic*] until Friday, 26 April 2024, at 4:00 p.m. Enrollment is on a first come, first served basis.  The CARAvan safe parking program in Union City is also accepting applications. Please contact 510-675-5482 to learn more.
>
> In discussion with case managers and service providers, the City of Fremont will offer short-term shelter extensions for a limited number of households that meet strict eligibility criteria.  Possible criteria for shelter extensions may include a documented imminent match to permanent housing, a documented medical condition or pending medical procedure requiring stabilization, or other documented vulnerability.  Households with minors and/or school-

1

age children that have been sheltering at the motel as their
2

sole/primary place of residence will be considered for extension to
support ongoing educational efforts.  Any offer of short-term
3

extension will be made in writing no later than Monday, 22 April
2024, and an updated City of Fremont program agreement will need
4

to be signed.  Any offer of shelter room extension may require the
household to relocate to a new motel room or different motel
property in Fremont.

5

*Id.* at 7.

6

The final notice, dated April 29, 2024, reads:

7

In accordance with the Winter Relief program agreement, the City
8

of Fremont emergency shelter program will close, and participants
are required to exit their shelter rooms by Wednesday, 01 May 2024,
9

10:00 a.m.  Your assigned service provider will continue to be
available well beyond the program closure date.  Please work with
10

them to review your exit plan, ensure you are document-ready for
any future housing opportunities, and accept any other alternative
shelter opportunities that may be offered to you.

11

12

Please consider asking your service provider to submit a referral to
the City of Fremont's Housing Navigation Center (HNC).  Located
13

adjacent to City Hall buildings, the HNC is an innovative approach
to help those experiencing homelessness find housing while
14

providing a clean, safe, and calm environment so participants can
focus on finding stable, permanent housing.  To watch a short video
15

about the HNC, please enter "Tour of Fremont's Housing
Navigation Center" into the YouTube search bar.  You can also visit
16

the City of Fremont website to learn more[:] *www.fremont.gov*.

17

In addition to your assigned service provider, you can connect with
additional housing resources:

18

**BACS South County Wellness Center - 40963 Grimmer Blvd.**
19

**Fremont, CA 94538**
Drop in: Monday- Friday (8:00 a.m.- 4:30 p.m.), Saturday-Sunday
20

(9:00 a.m. - 4 :00 p.m.)
Phone Number: 510-657-7425

21

**ABODE Housing Resource Center - 4075 Pa1mzian Way.**
22

**Fremont, CA 94538**
Drop in: Monday and Tuesday (9:00 a.m. - I :00 p.m.)
Phone Number: 510-330-5822

23

24

**Call 211: Information and Referral Services**

25

The City of Fremont Safe Parking program provides a safe place for
overnight parking for those who are sheltering in a
26

vehicle.  The Union City CARAvan safe parking program is also
accepting applications.  For CARAvan, please contact
27

510-675-5482.  Please reach out to learn more about program
requirements.

28

1

**In accordance with the Winter Relief program agreement, you are responsible for removing all of your personal belongings from the motel property when you leave the program. The City of Fremont will not be responsible for storing any personal belongings left behind after the closure of the program. Motel management will consider any personal belongings left on the motel property past 01 May 2024 at 10:00 a.m. as unwanted and abandoned.**

*Id.* at 8 (emphasis in original).

**B.     Procedural Background**

On April 30, 2024, the day before participants were due to check-out, Plaintiffs commenced this action, asserting claims under 42 U.S.C. § 1983 for violations of the Fourteenth Amendment (state-created danger), the Fourth Amendment (unreasonable seizure), the Eighth Amendment (cruel and unusual punishment).[3]  ECF 1 at 8-9, 10-11, 12-13.  Plaintiffs also moved for a temporary restraining order.  ECF 1.  This Court immediately issued an order requiring Fremont to maintain the status quo, setting May 2, 2024 as the deadline for Fremont to respond to Plaintiffs' motion, and scheduling a Zoom hearing for May 3, 2024.  ECF 6.  At the May 3, 2024 hearing, the Court directed the parties to immediately submit the additional materials referenced during the proceedings and informed Fremont that it could consolidate program participants at the Motel 6 property still under contract with the City.  ECF 10.  Following the hearing, Fremont filed a supplemental declaration.  ECF 9.  Plaintiffs Rivers, Durmas, Patterson, and Just each submitted an application to proceed in forma pauperis.  ECF 11, 12, 13, 14.  Plaintiff Sanchez also filed a supplemental declaration.  ECF 15.

**II.     LEGAL STANDARD**

A temporary restraining order may be granted where the plaintiffs (1) are likely to succeed on the merits; (2) are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest.  *Winter v. Nat. Resources Defense Council. Inc.*, 555 U.S. 7, 20 (2008).  With respect to the success on the merits and balance of harms factors, courts permit a strong showing on one factor to offset a weaker

---

[3] The complaint also identifies the Americans with Disabilities Act as a basis for the Court's jurisdiction.  ECF 1 at 2.  Plaintiffs, however, did not include a claim under the ADA or allege facts that could be construed to support any such claim.  For these reasons, the Court has not analyzed the ADA in ruling on the instant motion for a temporary restraining order.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    showing on the others, so long as all four factors are established.  *Alliance for the Wild Rockies v.*

2    *Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).  "Thus, when plaintiffs establish that the balance of

3    hardships tips sharply in their favor, there is a likelihood of irreparable injury, and the injunction is

4    in the public interest, they need only show 'serious questions' on the merits."  *Where Do We Go*

5    *Berkeley v. Cal. Dep't of Transp.*, 32 F.4th 852, 859 (9th Cir. 2022) (citation omitted).  Moreover,

6    the Ninth Circuit has held that " 'serious questions going to the merits' and a hardship balance that

7    tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two

8    elements of the *Winter* test are also met."  *See Alliance for the Wild Rockies*, 632 F.3d at 1132.

9    **III.    DISCUSSION**

10         The Court understands the severe hardships Plaintiffs face and the extreme challenges they

11    are expected to overcome with little to no resources.  On the current record, however, Plaintiffs do

12    not meet the legal standard that governs whether they are entitled to a temporary restraining order.

13    The Court addresses each factor of that standard below, but first addresses the threshold issue of

14    standing.

15         **A.    Standing**

16         "Federal courts must determine that they have jurisdiction before proceeding to the

17    merits," and plaintiffs must demonstrate standing as a necessary component of jurisdiction.  *Lance*

18    *v. Coffman*, 549 U.S. 437, 439 (2007).  To have Article III standing, each plaintiff must show

19    (1) that they have suffered an injury in fact, (2) caused by the challenged conduct, (3) that is likely

20    redressable by a favorable judicial decision.  *Friends of the Earth, Inc. v. Laidlaw Env't Servs.*

21    *(TOC), Inc.*, 528 U.S. 167, 180-81 (2000).  For purposes of injunctive relief, "[a]bstract injury is

22    not enough" – the plaintiff must have sustained or be in immediate danger "of sustaining some

23    direct injury as the result of the challenged" law or official conduct.  *O'Shea v. Littleton*, 414 U.S.

24    488, 494 (1974) (quotation marks and citation omitted).

25         Fremont argues that Sanchez is the only properly named Plaintiff before the Court, that she

26    may not act on behalf of any other program participant, and that she may not purport to meet the

27    above standing requirements for any other Plaintiff.  ECF 8 at 6-7.  Because Sanchez has not

28    shown that she is an attorney, Fremont is correct that Sanchez cannot represent any other Plaintiff.

However, courts must construe pleadings of self-represented parties liberally, *see Stanard v. Dy*, 88 F.4th 811, 818 (9th Cir. 2023), and generally construe pleadings "so as to do justice," *see* Fed. R. Civ. P. 8(e).  Given that there is no dispute that the individuals named in the complaint and those whose names appear in the declarations filed in support of the motion for temporary restraining order are affected by the Winter Relief Program's expiration, the Court will treat each individual as a Plaintiff for the purpose of the instant motion.  However, as the Court explained during the May 3, 2024 hearing, any individual seeking to move forward as a Plaintiff in this action must be named in an amended complaint signed by all Plaintiffs and must, if not already done, submit an application for proceed in forma pauperis[4] by no later than **June 3, 2024**.  Failure to do so will mean that this lawsuit will proceed only on behalf of Sanchez, the only individual who signed the complaint.  *See* ECF 1 at 15, ECF 3.

Having addressed the standing issue Fremont raises, the Court now turns to the factors that govern whether Plaintiffs are entitled to a temporary restraining order, beginning with the likelihood of success on the merits.

### B.    Likelihood of Success on the Merits

Plaintiffs have not demonstrated that they are likely to succeed on the merits of their claims.[5]  The Court addresses each claim below.

#### 1.    Fourteenth Amendment (State-Created Danger)

"To succeed on a claim under the state-created danger doctrine, plaintiffs must establish, (1) that the officers' affirmative actions created or exposed [them] to an actual, particularized danger that [they] would not otherwise have faced; (2) that the injury [they] suffered was foreseeable; and (3) that the officers were deliberately indifferent to the known danger." *Janosko v. City of Oakland*, No. 3:23-CV-00035-WHO, 2023 WL 187499, at *3 (N.D. Cal. Jan. 13, 2023)

---

[4] The required application is available online at https://www.cand.uscourts.gov/wp-content/uploads/forms/civil-forms/Application-to-Proceed-In-Forma-Pauperisnon-prisoner.pdf .

[5] This does not mean that the Court is persuaded by Fremont's argument that the contractual nature of its relationship with Plaintiffs precludes liability on a constitutional claim.  Should Fremont elect to renew that argument later in this litigation, the Court expects Fremont to provide supporting authority.

United States District Court
Northern District of California

1    (citing *Hernandez v. City of San Jose*, 897 F.3d 1125, 1133 (9th Cir. 2018) (internal quotations

2    omitted; modifications in original)).

3           Here, Plaintiffs allege that as a condition of participating in the Winter Relief Program,

4    they had to abandon the possessions – such as recreational vehicles, camping equipment, and

5    generators – they had with them at the time they joined the program.  *See* ECF 1 at 5-8, 20, 22, 23,

6    25, 30-31.  Plaintiffs allege that they needed these possessions to survive as unhoused persons

7    before they participated in the program, and they now need them again as they exit the program

8    without the housing they claim was promised.  *See id.* at 7.  Plaintiffs allege that they are worse

9    off now than before the program because they again face homelessness but without the supplies

10   necessary to survive unhoused.  *See id.*

11          Fremont, however, contends that Plaintiffs abandoned their property voluntarily so that

12   they could participate in the Winter Relief Program, which provided extensive benefits to each

13   participant, including temporary housing in the winter months, meals, other support services, and

14   offers of alternative shelter.  ECF 8 at 8-9.

15          On the record before the Court, Plaintiffs are unlikely to prevail on a state created danger

16   claim.  Fremont created a temporary program to protect unhoused individuals during the winter

17   months and provided extensive services as part of that program.  *See* ECF 8-1.  Though the parties

18   dispute underlying facts as to why the program did not secure permanent housing for the

19   Plaintiffs, the five notices Fremont delivered gave Plaintiffs sufficient notice that the program was

20   winding down and that they needed to use the remaining time to find a housing alternative.  *See*

21   ECF 9.  Based on this, the Court cannot conclude that Plaintiffs are likely to prevail in showing

22   that Fremont acted with deliberate indifference to a known danger.  *Cf. Blain v. Cal. Dep't of*

23   *Transp.*, 616 F. Supp. 3d 952, 956 (N.D. Cal. 2022) (finding "serious questions going to the

24   merits" where planned removal of plaintiffs from encampment, was "with scant notice and no

25   meaningful or articulated plans for sheltering them") *order dissolved*, No. 3:22-CV-04178-WHO,

26   2022 WL 3702106 (N.D. Cal. Aug. 26, 2022); *Janosko*, 2023 WL 187499, at *3 ("Alleging that

27   the government demolished an unhoused individual's shelter and property essential to protection

28   from the elements including cold and freezing temperatures, rain, and other difficult physical

United States District Court
Northern District of California

10

conditions is sufficient to state a claim for state-created danger under the Fourteenth Amendment.") (internal quotation marks omitted).

### 2.   Fourth Amendment (Unlawful Seizure)

The Fourth Amendment "protects two types of expectations, one involving 'searches,' the other 'seizures.' A 'search' occurs when the government intrudes upon an expectation of privacy that society is prepared to consider reasonable. A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984); *see also Lavan v. City of Los Angeles*, 693 F.3d 1022, 1027 (9th Cir. 2012).

Plaintiffs allege that they were required to abandon any possessions that did not fit into the two bins they were allotted as part of the Winter Relief Program. ECF 1 at 11. Plaintiff Sanchez additionally alleges that she was offered a paid storage locker but that it has not been paid for. *Id.* at 10. Plaintiffs, however, do not allege that Fremont seized their belongings. In addition, the evidence Fremont provides shows that Plaintiffs were repeatedly notified that they would have to make arrangements for their belongings as May 1 approached. *Cf. Lavan*, 693 F.3d at 1033 ("The district court did not abuse its discretion when it found a likelihood of success on Appellees' Fourteenth Amendment claims, as the City admits it failed utterly to provide any meaningful opportunity to be heard before or after it seized and destroyed property belonging to Skid Row's homeless population."). For these reasons, the Court finds that Plaintiffs are not likely to succeed on a Fourth Amendment claim for unlawful seizure.

### 3.   Eighth Amendment (cruel and unusual punishment)

The Eighth Amendment's Cruel and Unusual Punishments Clause "circumscribes the criminal process." *Martin v. City of Boise*, 920 F.3d 584, 615 (9th Cir. 2019) (quoting *Ingraham v. Wright*, 430 U.S. 651, 667 (1977)). "As relevant here, *Martin* held the Cruel and Unusual Punishment Clause of the Eighth Amendment prohibits the imposition of criminal penalties for sitting, sleeping, or lying outside on public property for homeless individuals who cannot obtain shelter. *Martin* made clear, however, that a city is not required to provide sufficient shelter for the homeless, or allow anyone who wishes to sit, lie, or sleep on the streets . . . at any time and at any

United States District Court
Northern District of California

1 place." *Johnson v. City of Grants Pass*, 72 F.4th 868, 877 (9th Cir. 2023), *cert. granted sub nom.*
2 *City of Grants Pass, Oregon v. Johnson*, 144 S. Ct. 679 (2024) (internal quotations and citations
3 omitted).  *Martin* also did not "suggest that a jurisdiction with insufficient shelter can *never*
4 criminalize the act of sleeping outside.  Even where shelter is unavailable, an ordinance
5 prohibiting sitting, lying, or sleeping outside at particular times or in particular locations might
6 well be constitutionally permissible."  *Martin*, 920 F.3d at 617 n.8 (emphasis in original).

7 Unlike in *Martin*, which involved a "sweeping" local ordinance that criminalized
8 homelessness, here there are no allegations connecting the facts of the complaint to the criminal
9 process other than a reference to a municipal ordinance regulating camping within city parks and
10 recreation areas, which Plaintiffs allege is punishable as a misdemeanor.  ECF 1 at 13.  Fremont
11 does not address whether the ordinance operates as Plaintiffs allege, but it does represent that it
12 "has not enforced any state or local law against Plaintiff [Sanchez]" and has not issued "any
13 criminal or administrative citations" against her.  ECF 8 at 10.

14 Moreover, Fremont has made offers of shelter to each Plaintiff.  *See* ECF 8-1 ¶¶ 9-14.  The
15 Court understands that Plaintiffs may have legitimate reasons for refusing any offers of shelter
16 they declined, but *Martin* "does not cover individuals who do have access to adequate temporary
17 shelter, whether because they have the means to pay for it or because it is realistically available to
18 them for free, but who choose not to use it."  *See Martin*, 920 F.3d at 617 n.8.

19 For the reasons discussed above, the first factor – likelihood of success on the merits –
20 does not weigh in favor of granting a temporary restraining order.

21 **C.    Irreparable Harm**

22 The Ninth Circuit has recognized that "[f]or many of us, the loss of our personal effects
23 may pose a minor inconvenience. . . .  [T]he loss can be devastating for the homeless."  *Lavan*,
24 693 F.3d at 1029.  While Fremont's contention that Plaintiffs voluntarily surrendered their
25 belongings as a condition of participating in the Winter Relief Program could potentially be
26 *technically* correct, it is significant that Plaintiffs are once again facing homelessness without the
27 supplies and other substantial possessions they had accumulated before entering the program.
28 Moreover, the program restricted Plaintiffs to two bins of personal belongings, *see* ECF 8-1 at 10,

and anything that Plaintiffs are forced to leave behind when they leave the program is deemed abandoned, *see* ECF 9 at 8. Given the circumstances Plaintiffs face, the loss of that property constitutes irreparable harm. *See Lavan*, 693 F.3d at 1029. This factor thus weighs in favor of granting a temporary restraining order.

### D. Balance of Equities

The third factor – the balance of equities – does not weigh in favor of granting a temporary restraining order. Here, Plaintiffs were on notice when they entered the program that it would end April 2024. *See* ECF 8-1 ¶ 9 & Ex. A. They received five notices, beginning in March 2023, that they would be required to leave their temporary accommodations on May 1. *See* ECF 9 ¶ 3 & Ex. B. Each notice encouraged Plaintiffs to make arrangements in anticipation of the program's end date and notified Plaintiffs of some of the resources available to them. While the Court is sympathetic to the reality that the resources available may not be enough or ideal, and that Plaintiffs have their reasons for declining any housing options that were offered to them, the instant case is unlike others where the balance of equities warranted temporary relief.[6] *Cf. Blain*, 616 F. Supp. 3d at 958 ("The balance of equities sharply tilts in the plaintiffs' favor for a period long enough to give them adequate notice of the action, time to make alternative plans, and time for the relevant governmental entities to help locate shelter (as they have committed to trying).").

### E. Public Interest

The final factor – the public interest – also does not weigh in favor of granting temporary relief. "While there is a public interest in ensuring that members of the community, including the unhoused, are not endangered or parted from their homes and community without cause," *see Prado v. City of Berkeley*, No. 23-CV-04537-EMC, 2023 WL 6307921, at *9 (N.D. Cal. Sept. 27, 2023) (internal quotations and citation omitted), Fremont has offered housing alternatives to Plaintiffs, other services, and repeated notice that the program would end on May 1. *See* ECF 8-1. This case is, therefore, unlike others where a temporary restraining order provided a necessary

---

[6] Because of this, the balance of equities do not tilt sharply in Plaintiffs' favor. For this reason, Plaintiffs would not be entitled to a temporary restraining order even if the Court had concluded that Plaintiffs established substantial questions going to the merits of their claims. *See Alliance for the Wild Rockies*, 632 F.3d at 1132.

United States District Court
Northern District of California

1    "stopgap to prevent a particular violation of constitutional rights that results from the combination

2    of lack of notice and failure to provide alternative shelter."  *See Blain*, 616 F. Supp. 3d at 955; *see*

3    *also Janosko*, 2023 WL 187499, at *4 ("[A] short, defined delay in the planned evictions is in the

4    public interest.").  In addition, the Winter Relief Program offers much-needed temporary housing

5    resources during a time of year when unhoused persons are most at risk.  Allowing these programs

6    to operate, with appropriate parameters, to prevent loss of life, to connect individuals with some of

7    the services they need, and to secure housing for at least some portion of the unhoused population

8    is in the public interest.

9    **IV.    CONCLUSION**

10          For the reasons set for above, the balance of the four factors that govern whether Plaintiffs

11   are entitled to a temporary restraining order do not weigh in favor of granting the relief requested.

12   Accordingly, Plaintiffs' motion for a temporary restraining order is **DENIED**.

13          The Court further **ORDERS** that:

14   • Any individual seeking to move forward as a Plaintiff in this action must be named in

15     an amended complaint signed by all Plaintiffs and any individual who has not yet done

16     so must also submit an application to proceed in forma pauperis by no later than **June**

17     **3, 2024**.  Failure to do so will mean that this lawsuit will proceed only on behalf of

18     Sanchez, the only individual who signed the complaint.

19   • The applications to proceed in forma pauperis filed by Plaintiffs Sanchez, Rivers,

20     Durmas, Patterson, and Just, ECF 3, 11, 12, 13, 14, are **GRANTED**.  The Clerk is

21     directed to issue summons, and the U.S. Marshal shall serve, without prepayment of

22     fees, a copy of the complaint, any amendments, attachments, scheduling orders, and

23     any other documents specified by the Clerk of Court.  Based on Fremont's counsel's

24     representations at the May 3, 2024 hearing, the U.S. Marshall shall serve the required

25     documents via email on Bronwen E. Lacey at blacey@fremont.gov, by U.S. Mail to

26     3300 Capitol Ave., Building A, Fremont, CA 94538, or by personal delivery to the

27     Fremont City Clerk at the same address.

28   • Fremont's deadline to respond to the initial complaint is **STAYED** through June 3,

2024.  Fremont will have 21 days from that date to respond to whichever complaint is operative at that time.  This does not, however, preclude Fremont from filing an answer or responsive pleading to the initial complaint.  Rather, the Court is attempting to spare Fremont the expense of doing so, anticipating that Plaintiffs will file an amended complaint by June 3, 2024.

Because Plaintiffs are not represented by counsel, they may wish to contact the Federal Pro Bono Project's Help Desk – a free service for pro se litigants – by calling (415) 782-8982 to make an appointment to obtain limited legal assistance from a licensed attorney.  More information about the program is available online at the Court's website: https://cand.uscourts.gov/about/court-programs/legal-help-desks/ .

**IT IS SO ORDERED.**

Dated: May 6, 2024

_____
**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**

United States District Court
Northern District of California